UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 18-60357-CR-UNGARO/HUNT

UNITED STATES OF AMERICA,

      Plaintiff,

v.

RYAN JOSEPH GASCOIGNE,

      Defendant,

_____/

## REPORT AND RECOMMENDATION

This matter is before this Court on Defendant Ryan Gascoigne's Motion to Suppress, ECF No. 20, and Amended Motion to Suppress, ECF No. 28. The Honorable Ursula Ungaro referred this motion to the undersigned United States Magistrate Judge for a report and recommendation, ECF No. 23; *see also* 28 U.S.C. § 636(b); S.D. Fla. Mag. R. 1. The undersigned held an evidentiary hearing on the motion on October 2, 2019, ECF No. 36. Having carefully reviewed the motion, the response and reply, the entire case file, and applicable law, having heard testimony as well as oral argument of counsel and being otherwise fully advised in the premises, the undersigned hereby RECOMMENDS that Gascoigne's motion be DENIED.

## I. BACKGROUND

Defendant is charged with possession of fifteen or more access devices, in violation of 18 U.S.C. § 1029(a)(3); and with five counts of aggravated identity theft, in

violation of 18 U.S.C. §1028A(a)(1).  ECF No 1.  The charges all stem from a traffic stop and subsequent warrantless search that happened on May 6, 2016, in Broward County. The stop and subsequent search produced a notebook that contained numerous entries of personally identifiable information (PII) belonging to people unrelated to Defendant. Defendant seeks to suppress all the fruits of the warrantless search.

At the hearing, each side presented a witness who testified about the events of May 6, 2019.  Not surprisingly, the stories differ.

Detective Michael Merrill is a two-year veteran of the Broward Sheriff's Office (BSO) assigned to the Burglary Apprehension Team.  He previously worked for six years with the Pembroke Pines Police Department.  Detective Merrill testified that while on patrol in the early afternoon of May 6, 2016, he saw through the driver's side window of a grey Dodge Charger that the driver, Defendant, was not wearing a seatbelt.  After running the car's tag, he pulled the Charger over.

While speaking to Defendant, the detective noticed the odor of cannabis coming from the interior of the vehicle.  He asked Defendant to get out of the car and searched the interior of the Charger.  He located a backpack on the front seat and looked inside. Inside the backpack were six cell phones and a blue notebook.  Aware from his experience and training that people sometimes conceal marijuana in small places, including the pages of a notebook, he opened the notebook and leafed through the pages.  He did not find any marijuana, but immediately noticed that the pages of the notebook contained what appeared from the format to be social security numbers, as well as names and dates of birth.  He also noticed the word "used" next to some of the

names.  Based on his knowledge of the prevalence of identity theft and fraud in South Florida, he suspected that the notebook contained evidence of fraud.

At the time the detective was looking in the notebook, Defendant was seated on the curb and could not have seen the contents of the notebook.  Detective Merrill did not ask Defendant about the information at that time.  Rather, he asked for and received consent to search the trunk.  Inside the trunk, he observed an AK-47, a Glock handgun, and a large amount of cash.  The guns were safely stored and were not reported stolen.  At this point, Detective Merrill asked Defendant if the backpack was his, to which he answered yes.  When asked about the notebook, Defendant said it was not his notebook.

No marijuana was found in the car.  Detective Merrill issued a citation for failure to wear a seatbelt.  He seized the notebook as possible evidence of fraud, sealed it and turned it over to the Economic Crimes Unit.  The notebook was processed for fingerprints, and Defendant's fingerprints were found on the interior of the notebook.  Fraud detectives contacted some of the people whose information was listed in the notebook.  Some of them confirmed to police that they had not authorized Defendant to have their PII and were in fact victims of identity theft.  At no time did any law enforcement officer seek or obtain a search warrant.

Mr. Gascoigne testified that he was wearing a seatbelt while driving the grey Charger on May 6, 2016, and that he always wears a seatbelt while driving.  He rented the car the day before, and no one else had been in the car since he rented it.  There was no marijuana in the car, nor was there any detectable smell of marijuana in the car when he was stopped.  Both the backpack and the notebook inside belonged to him, but

when asked on that day, he told the detective the notebook was not his.  He denied ownership because the officer was asking about the contents, and he knew the notebook contained contraband PII.  Gascoigne asked the detective if there was anything he could do to help himself because he thought he was going to be arrested. He offered information about "bookie spots" (illegal sports betting locations), but the detective was only interested if they were in Pembroke Pines.  On cross, Defendant acknowledged that he lied to Detective Merrill on the date of the stop, and that he is "not opposed to lying."

## II.  ANALYSIS

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  A necessary corollary to this right is that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." *United States v. Ross*, 456 U.S. 798, 825 (1982).  Defendant argues that none of these exceptions apply, and that the search and seizure are therefore unconstitutional.  His argument has four parts, which the undersigned will address in turn.

### A.  The Initial Stop.

To begin with, Defendant argues that the initial vehicle stop was invalid.  It is settled law that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 809 (1996).  Here, Detective Merrill testified that he observed Defendant

driving without a seatbelt fastened, and that he issued a citation for this traffic infraction. (The citation was entered into evidence at the hearing.)   Defendant contradicted this testimony, but also admitted to lying about other matters on the date of the stop. Defendant's contrary testimony notwithstanding, the undersigned found Detective Merrill's testimony to be credible on this issue, and therefore finds the initial stop to be reasonable.

### B.  The Search of the Car.

Next, Defendant argues that the ensuing search of the car based on the detective's assertion that there was a strong odor of marijuana coming from the car was unreasonable.   The Fourth Amendment's protections extend to the driver of a car, including a rental car.   *United States v. Cooper*, 133 F.3d 1394 (11th Cir. 1987). Nevertheless, the Supreme Court long ago held that a warrantless search of an automobile stopped by police officers who had probable cause to believe the vehicle contained contraband was not unreasonable within the meaning of the Fourth Amendment.  *Carroll v. United States*, 267 U.S. 132 (1925).  And, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982).  This includes closed containers.  *Id.*  Here again, the undersigned finds the detective's testimony to be credible, despite Defendant's testimony to the contrary and the absence of any marijuana found in the car.  Having made this finding, it follows that the detective's search of the car, and the backpack, was reasonable.

### C.  The Search of the Notebook.

The next step in Defendant's argument is that the search and seizure of the notebook was unreasonable.  With respect to the initial, on-scene search of the notebook, the Government cites several cases upholding the reasonableness of searching a notebook for contraband, specifically marijuana.  *See United States v. Simmons*, 2016 WL 285176 at *21 (W.D. N.Y. Jan. 22, 2016) (officer unfolding a notebook to determine whether marijuana was concealed inside it was a lawful act that was within the scope authorized by the smell of marijuana emanating from the vehicle); *United States v. Reid*, 2011 WL 6370508 at * 7 (W.D. LA. Nov. 14, 2011) (upholding officer's search of a notebook in an effort to find marijuana during automobile search); *United States v. Reeves*, 604 Fed. Appx. 823, 828 (11th Cir. 2015) (upholding officer's cursory search of a notebook and medical records as part of his search for narcotics based in part on his training and experience, which included knowledge that individuals sometimes conceal narcotics between pages of a notebook).  The undersigned finds these cases persuasive, and therefore finds Detective Merrill's initial cursory search of the notebook to be reasonable and lawful.

### D.  The Seizure of the Notebook and Subsequent Search.

Finally, Defendant argues that even if the initial, cursory search was reasonable, Detective Merrill had no right to seize the notebook, and that in any event, the later more detailed search of the notebook by the Economic Crimes Unit required a warrant. The Government counters 1) that Defendant does not have standing to challenge the seizure and second search because he abandoned the notebook; and 2) that the

seizure and second search were proper because the contents of the notebook were in plain view.

### 1. Abandonment.

"[I]t is settled law that one has no standing to complain of a search or seizure of property he has voluntarily abandoned.'" *United States v. Sparks*, 806 F.3d 1323, 1342 (11th Cir. 2015) (quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973)). "The critical inquiry when determining whether an abandonment has occurred is 'whether the person prejudiced . . . voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question'" at the time of the search. *Id.* (quoting *United States v. Ramos*, 12 F.3d 1019, 1022 (11th Cir. 1994)). While the defendant has the burden of proving a legitimate expectation of privacy, the burden of proving abandonment is on the Government. *Ramos,* 12 F.3d at 1023.

The abandonment inquiry is an objective one using a common-sense approach, with the defendant's intent "discerned from statements, acts, and other facts." *Sparks,* 806 F.3d at 1342. The Eleventh Circuit has held that "disclaiming ownership or knowledge of an item ends a legitimate expectation of privacy in that item." *United States v. Hawkins*, 681 F.2d 1343, 1345 (11th Cir. 1982) (drawing a distinction between an affirmative disavowal of ownership and a passive failure to claim incriminating evidence).

Here, Detective Merrill testified that when he quickly looked at the pages of the notebook, he immediately suspected the writings constituted contraband (PII). But he did not show the pages to Defendant, nor was Defendant in a position to see the contents of the notebook. ECF No. 37 at 11-12. When he later asked Defendant if the

notebook was his, Defendant acknowledged that the backpack was his, but specifically denied that the notebook was his.  *Id.* at 13-14; 44; 48; 59; 61.  Indeed, Defendant admitted at the suppression hearing that he told Detective Merrill on scene that the notebook did not belong to him.  *Id.* at 68.  Although Defendant testified that this was a lie, and that the notebook in fact does belong to him, *Id.* at 68-69, this Court must assess whether the facts and circumstances "*at the time of the search*" suggest that the defendant relinquished his interest in the property in question.  *Ramos*, 12 F.3d at 1023 (quoting *United States v. Winchester*, 916 F.2d 601, 603 (11th Cir. 1990)) (emphasis in original).  The undersigned finds that the facts and circumstances on the scene, at the time of the search, do establish abandonment.  Accordingly, Defendant has no standing to challenge the seizure of the notebook or any subsequent search of its contents.

## 2.  Plain View.

Finally, the Government argues that even if Defendant has standing with respect to the notebook, the contents of the notebook were in plain view while the detective was checking the notebook for marijuana, and therefore the seizure of the notebook and any subsequent search of the contents did not require a warrant.

"Under the plain view doctrine, the warrantless seizure of an item is permissible where '(1) an officer is lawfully located in a place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *United States v. Folk*, 754 F.3d 905, 911 (11th Cir. 2014) (quoting *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006)); *see also Horton v. California*, 496 U.S. 128, 136-37 (1990).  Seizure of property in plain view "is presumptively reasonable, assuming that there is probable

cause to associate the property with criminal activity." *Texas v. Brown*, 460 U.S. 730, 741-42 (1983).   Probable cause "'is a flexible, common-sense standard.   It merely requires that the facts available to the officer 'would warrant a man of reasonable caution in the belief' . . . that certain items may be contraband . . .  or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false.'" *Id.* at 742 (quoting *Carroll*, 267 U.S. at 162).

Here, Detective Merrill's decision to look into the notebook was justified, as analyzed above.   Once there, in a place where he had the legal right to be, he testified that he "immediately noticed the format of a Social Security number on each page, and that caught [his] attention."   ECF No. 37 at 10.   Noting that South Florida "is a very large hub for fraud," he testified that upon seeing the format of names, dates of birth, and social security numbers, as well as the word "used" written next to some of the names, "it stood out to [him] that possibly these people were victims of either identity theft or fraud."   *Id.* at 10-11.   This is sufficient to establish probable cause to believe that the notebook contained contraband PII.   *See United States v. Dabrezil*, 603 Fed. Appx. 756, 760 (11th Cir. 2015) (affirming the seizure of a notebook and a ledger containing names, dates of birth, and social security numbers because the incriminating nature of the information was readily apparent); *United States v. Nwabuoku*, 2005 WL 1588684 at * 1 (2nd Cir. July 7, 2005) (concluding that the plain view doctrine applied where, in light of the officer's experience, "the list of names, Social Security Numbers, and dates of birth . . . supported probable cause to believe that a crime had occurred").   Accordingly, the seizure of the notebook was appropriate and constitutional under the plain view doctrine.

### 3.   The Second Search.

Lastly, Defendant argues that, even if Detective Merrill lawfully seized the notebook on the scene, law enforcement had no right to conduct a second warrantless search of the notebook after it was turned over to detectives from the Economic Crimes Unit.  Defendant relies on *United States v. Khoury*, 901 F.2d 948, 959 (11th Cir. 1990), in support of his argument.  But *Khoury* is readily distinguishable.  In *Khoury*, an agent removed a briefcase from an impounded car as part of an inventory search, in order to determine whether any items in the car were items of value to the defendant.  At his office, he opened the briefcase and inspected the contents of the briefcase, including a spiral notebook.  After a cursory inspection of the notebook, he determined that it appeared to be "a diary of some sort," and therefore might be of value to its owner.  He did not, however, observe anything he considered to be of evidentiary value.  At this point, the inventory search was completed.  Only later did the agent begin to suspect that the notebook might contain evidence of a crime.  Once he arrived at this conclusion, he conducted a second, warrantless search.  The court held that "[s]uch a warrantless investigatory search may not be conducted under the guise of an inventory." *Id.*

Here the initial search of the notebook was justified by the detective's suspicion that there was marijuana present.  Once he looked inside the notebook, he immediately observed in plain view items of *evidentiary value*, that is, PII.  He saw what he believed to be evidence of a crime, not an item of personal value to its owner.  Because this original seizure was based upon probable cause, as discussed above, there was no need to obtain a warrant before further inspecting the notebook.  *Cf. United States v.*

10

*Smith*, 459 F.3d 1276, 1291-92 (11th Cir. 2006) (upholding seizure of suspected child pornography during execution of a drug warrant where photographs were in plain view and appeared to officer on the scene to be pictures of "extremely young" girls, a suspicion confirmed by further investigation by sex crime unit; officer's initial belief that the pictures were of minors established probable cause to seize them, even without absolute certainty that all elements of a crime had been completed when the articles were seized).

####    E.  Conclusion.

In sum, the initial stop was valid based upon a traffic infraction for which Defendant was cited.  The subsequent search of the car and its contents was valid based upon the detective's observation of the odor of marijuana coming from the car. The cursory search of the notebook was valid because of the possibility that it could have concealed marijuana.  The seizure of the notebook was valid because the detective immediately observed what he believed to be evidence of identity theft or fraud on the pages of the notebook.  Defendant gave up his right to challenge the seizure of the notebook by denying ownership.  And the subsequent search and analysis of the notebook was valid because the notebook was seized based upon probable cause.  Accordingly, the Defendant's Motion to Suppress should be denied.

### III. RECOMMENDATION

Based upon the foregoing, the undersigned hereby RECOMMENDS that Ryan Gascoigne's Motion to Suppress and Amended Motion to Suppress, ECF Nos. 20 and 28, be DENIED.

Because of the current trial schedule, the period for objections must necessarily be shortened.  Unless otherwise modified by the District Court, Defendant may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district on or before October 23, 2019.  Any response by the Government must be filed on or before October 25, 2019.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3–1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

DONE and SUBMITTED at Fort Lauderdale, Florida, this 17th day of October, 2019.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE